IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

v.  Criminal No. 4:19cr86-4 (DJN)

SELWYN CLARKE,
         Defendant.

### MEMORANDUM OPINION

"When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022). As the Fourth Circuit has explained, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes "a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments." *Id.* Put another way, § 3582(c)(1)(A)(i) provides this court with a *very limited* mechanism by which it may act upon the desire to alleviate the exceptional distress of a qualifying inmate by reducing his sentence or granting him early release.[1] *See* Merriam-Webster Online Dictionary (2023) (defining "compassion" as "sympathetic consciousness of others' distress together with a desire to alleviate it").

---

[1] To be sure, despite the frequency with which the Court receives and reviews such requests, motions presenting truly extraordinary and compelling circumstances are *exceedingly rare*. *See United States v. Loewen*, 2022 WL 16747269, at *2 (E.D. Va. No. 7, 2022) (explaining that compassionate release remains "an extraordinary and rare event") (citation omitted).

This matter comes before the Court on Defendant Selwyn Clarke's Motion for Immediate Release pursuant to § 3582(c)(1)(A)(i). (ECF Nos. 300, 314.) Clarke seeks a sentence reduction based on a tragic change in his family's circumstances, including the death of his eldest son and his need to care and provide for his seriously injured wife.[2] The Government does not oppose Clarke's Motion. (ECF No. 320.) For the reasons set forth below, the Court will GRANT the Motion. (ECF No. 300, 314.) Clarke's sentence shall be REDUCED to TIME SERVED, and the Court shall order that he be IMMEDIATELY RELEASED subject to the terms of supervised release set forth in his Original Judgment and below.

## I. BACKGROUND

### A. Procedural History

Clarke filed a *pro se* Motion for Compassionate Release on February 22, 2023. (ECF No. 300.) Along with his typed Motion, Clarke included a commonly circulated form motion. (*Id.* at 5–10.) As noteworthy here, the form includes checkable boxes by which an inmate may request either that the court (1) file attached documents, such as medical records, under seal or (2) appoint counsel to assist him in filing a supplemental motion. (*Id.* at 5–6.) Because Clarke checked the box indicating that he was not requesting the appointment of counsel, the Court directed the Government to respond to Clarke's *pro se* submission. (ECF No. 304.)

---

[2] In his original *pro se* Motion, filed on February 22, 2023, Clarke also cited his "multiple health problems," including type II diabetes, and the risk posed by the ongoing Coronavirus-19 ("COVID-19") Pandemic as extraordinary and compelling reasons supporting his release. (ECF No. 300, at 1–2.) The Court finds that Clarke's health conditions (and any marginal increase in the risk of serious illness from COVID-19 infection that he faces because of those conditions) are neither extraordinary nor compelling. Because the Court will grant Clarke's Motion on other grounds, the Court declines to elaborate on this aspect of his Motion. However, the Court notes the existence of Clarke's medical conditions and his ongoing need for treatment for the purpose of applying the 18 U.S.C. § 3553(a) factors to Clarke as he comes before the Court today and appropriately contouring the conditions of his release.

2

On March 9, 2023, however, the Government took the unusual step of requesting that the Court appoint counsel for Clarke. (ECF No. 306.) Specifically, the Government noted that it would need to access and review Clarke's wife's medical records to properly respond to his Motion. (*Id.* at 3–4.) On March 10, 2023, the Court granted the Government's Motion, appointed an attorney for Clarke and directed that the attorney confirm Clarke's consent to such representation and file a notice with the Court attesting to the same. (ECF No. 307.) Counsel filed a notice on March 29, 2023, indicating that Clarke wished to proceed with his aid. (ECF No. 310.) On April 24, 2023, Counsel filed a supplemental Motion for Compassionate Release. (ECF No. 314.) The Government filed its Response on May 8, 2023. (ECF No. 320.)

Noting the Parties' shared interest in expediting these proceedings, the Court finds that the record before it provides ample evidence upon which it may decide Clarke's motion.

### B. Clarke's Underlying Offense

From February 2014 to February 2019, Clarke participated in a conspiracy to distribute various drugs, including marijuana, cocaine and heroin. (Presentence Investigation Report ("PSR") (ECF No. 22) at 4–5.) In essence, Clarke served as a middleman, securing distribution level quantities of narcotics from higher-level participants to pass along to those below him. (*Id.*) But Clarke's role was certainly not trivial. In total, Clarke moved 159,213.6 grams of marijuana, 6,123.6 grams of heroin and 36,773.6 grams of cocaine.[3] (*Id.* at 5.) On October 2, 2019, a grand jury indicted Clarke for his part in the drug distribution network, charging him

---

[3] The Court notes that Clarke initially challenged these quantities, arguing that his PSR incorrectly "lumped" his drug weight together with a co-conspirator's drug weight and that there existed a "double counting issue of counting purchased drugs as well as sold drugs." (ECF No. 224, at 1.) In response, the Government argued that Clarke "pleaded guilty to a conspiracy charge and the narcotics attributable to him were reasonably foreseeable in the context of the conspiracy." (ECF No. 221, at 2.) At sentencing the Court noted no formal objections and adopted the factual portions of the PSR. (ECF No. 241, at 1.)

with one count of Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(4).[4] (ECF No. 16.) On July 16, 2020, Clarke pleaded guilty to the sole count. (ECF No. 135.)

During a sentencing hearing on February 19, 2021, the Court calculated Clarke's final guideline range as 87 to 108 months. (PSR at 16.) Clarke's total offense level was 29.[5] (*Id.* at 7.) Clarke had no prior convictions resulting in criminal history points, so his criminal history score was zero and his criminal history category was I. (*Id.* at 8–9.) In consideration of Clarke's minimal criminal record, his acceptance of responsibility and abundant evidence that Clarke's conduct related to the instant offense was an aberration of character, the Court granted in part Clarke's motion for a downward variance and sentenced him to seventy months of imprisonment followed by five years of supervised release.[6] (ECF Nos. 241–243.)

Clarke is currently serving his sentence at Federal Correctional Institute Edgefield, a medium security facility in South Carolina. Federal Bureau of Prisons ("BOP"), *Find an Inmate*, https://www.bop.gov/inmateloc/ (select "Find By Number"; then select "BOP Register Number"; then search for "93747-083") (last visited May 9, 2023). His projected release date is May 4, 2024. *Id.*

---

[4] The Indictment charged three additional conspirators with the same offence. (ECF No. 16.) On February 11, 2020, a Superseding Indictment added five additional conspirators, but Clarke's underlying charge remained the same. (ECF No. 45.)

[5] In addition to receiving a three-point reduction for acceptance of responsibility, Clarke received a further two-point reduction pursuant to U.S.S.G. § 2D1.1(b)(18) based on his lack of criminal history points. (*Id.* at 7.)

[6] The Court allowed Clarke to self-surrender on April 30, 2021. (ECF No. 242, at 2.)

4

### C. Clarke's Motion for Compassionate Release

Clarke met his wife, Nyssa, during the mid-1990s. (PSR at 11.) The two married in 2004 and had two children together, sons Selwyn, Jr. and Curtis. (*Id.* at 11–12.) Although Clarke and his wife temporarily separated in 2015,[7] they never divorced and continued to cohabitate as often as possible and raise their children together. (PSR at 6, 11–12.) At the time of Clarke's 2021 sentencing, Nyssa and the couple's children each wrote letters on Clarke's behalf attesting to his steadfast dedication to his family.[8] (ECF No. 224-1, at 1–4.)

On November 20, 2022, Nyssa and Selwyn Jr. were traveling on Interstate I-20 West in Georgia when their vehicle was struck by another car after its driver fell asleep at the wheel. (ECF No. 314, at 4; ECF No. 300, at 1.) Emerging from that wreck largely unscathed, Nyssa and Selwyn Jr., a United States Marine Corps Reserves Corporal, hurried to help the other driver. (ECF No. 314, at 4; ECF No. 300, at 1.) As they worked to free the driver from her car, both were struck by a third vehicle, forcing them across the median and deeper into oncoming traffic. (ECF No. 300, at 1.) In these chaotic moments, a bystander pulled Nyssa to safety, but Selwyn, Jr. was fatally struck again. (*Id.*)

Nyssa suffered multiple broken bones and fractures as well as a traumatic brain injury which left her in a coma following the accident. (ECF No. 314, at 4; ECF No. 319, at 12.) She

---

[7] That year, Nyssa and their children moved from Virginia to Georgia for her job. At the same time, Clarke's father, who lived in New York, began to decline in health. Clarke remained in Virginia to continue working for his in-laws by managing several properties and to be closer to his ailing father, but he would travel to Georgia frequently for work and to spend time with his wife and sons. (*Id.* at 6, 11.) Clarke's PSR attributes this strained living situation as the reason for the couple's *de facto* separation. Clarke's father passed away in 2019. (*Id.* at 10.) Following his 2019 arrest, Clarke returned to Georgia full-time, where he lived with his wife until his self-surrender in April 2021. (ECF No. 321, at 1.)

[8] In total, the Court received fifteen letters in support of Clarke, among them many letters from his in-laws, including Nyssa's parents and sister. (ECF Nos. 224-1, 237.)

5

remained in inpatient hospital care until January 11, 2023, then transferred to "inpatient rehabilitative care" at the Shepherd Center until February 21, 2023. (ECF No. 314, at 4.) Today, Nyssa "lives at the house in Conyers, Georgia," that she shared with Defendant before his incarceration. (*Id.*) She requires ongoing medical care and assistance with most of her basic daily functions. (ECF No. 317, at 1 (detailing the lasting effects of Nyssa's injuries and explaining that she will continue to require full-time supervision for an "undetermined amount of time . . . due to [her] cognitive and physical limitation[s]").) Nyssa's parents and her son Curtis serve as her temporary caregivers. (ECF No. 314, at 4.) However, because "her parents live in New York, and Curtis is an active-duty United States Navy member" who must return to his post, Nyssa's current situation is untenable. (ECF No. 314, at 4; ECF No. 300-1, at 23 (letter from Curtis Clarke).) Accordingly, Clarke seeks compassionate release to provide necessary physical, mental and emotional care for his wife. *See* Application Note 1.C(ii), U.S.S.G. § 1B1.13 (instructing that "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse" constitutes an extraordinary and compelling circumstance).

In support, Clarke provides Nyssa's medical records as well as numerous letters attesting to both Clarke's character and his wife's incapacitation. Clarke also points to his infraction-free BOP record, notes his participation in numerous drug programs, mental health counseling sessions and educational programs while in prison, and supplies a release plan, including written confirmation of a job offer. (ECF No. 314, at 6–7; ECF Nos. 314-6–314-9.) Clarke's prospective employer attests that the position will provide Clarke with "a flexible schedule so

[that] he can be available to support his family."[9] (ECF No. 314-9.) Finally, Clarke states that the United States Probation Office has visited and "cleared" his home as a suitable place for Clarke to reside while on supervised release. (ECF No. 314, at 5; ECF No. 314-4.)

The Government does not oppose Clarke's Motion, freely conceding that Clarke's familial circumstances are extraordinary and compelling and that the 18 U.S.C. § 3553(a) factors support the relatively modest sentence reduction that he seeks.[10] (ECF No. 320.) Rather, the Government asks the Court to cabin Clarke's relief by placing him "on home confinement with monitoring [allowing] time outs for work, medical treatment for his wife and other circumstances as approved by his supervising probation officer." (*Id.* at 1.)

## II. APPLICABLE LAW

The compassionate release statute begins with the default position that the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress created a few exceptions to the default position, however, including where "extraordinary and compelling reasons warrant" a reduction of a defendant's sentence. *Id.* § 3582(c)(1)(A)(i). Although the law originally permitted only the Director of the BOP to move for compassionate release on a defendant's behalf, the First Step Act of 2018 broadened § 3582(c) by allowing a federal inmate to directly move a court for compassionate release after first filing a

---

[9] In letters submitted to the Court, Clarke's sister-in law, A. Ramoatar, states that the family intends to pool its resources to help support the Clarkes financially and secure a nurse who can provide part-time care on the days that Clarke will work. (ECF Nos. 314-4, 314-11.)

[10] Based on Clarke's projected date of release, *supra* p. 4, reduction of his sentence to time served will shorten Clarke's sentence by approximately twelve months. Further, the United States Probation Office reports that Clarke's BOP "home detention eligibility date is . . . November 20, 2023." (ECF No. 321, at 2.)

7

compassionate release request with the warden of his facility. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

Under Section 3582(c)(1)(A), a court may not grant a defendant's motion unless the reduction is (1) at the outset, warranted by "extraordinary and compelling reasons," (2) "consistent with the 'applicable policy statements issued by the Sentencing Commission'" and (3) consistent with "any applicable § 3553(a) factors." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021) (quoting *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021)).

First, when assessing whether a defendant's motion presents "extraordinary and compelling reasons," the Fourth Circuit instructs that a district court's "inquiry [must be] multifaceted and . . . take into account the totality of the relevant circumstances." *United States v. Hargrove*, 30 F.4th 189, 197–98 (4th Cir. 2022).

Second, the Fourth Circuit has held that there is currently no applicable Sentencing Commission policy statement binding the district courts regarding motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 does not apply to motions filed by defendants). Thus, the Court may, subject only to several irrelevant exceptions, consider "*any* extraordinary and compelling reason" that a defendant raises. *Id.* As noteworthy here, however, the Sentencing Guidelines commentary and relevant BOP guidance "remain[] helpful" in defining extraordinary and compelling circumstances. *Hargrove*, 30 F.4th at 194 (citing *McCoy*, 981 F.3d at 282 n.7).

Finally, regarding the third prong, a defendant's demonstration of "extraordinary and compelling reasons" merely renders him "*eligible* for relief." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). The Court thus retains its discretion to deny the motion after considering the applicable § 3553(a) factors. *Id.* at 185. Upon review of Clarke's Motion and

8

the supporting exhibits, the Court concludes that he has demonstrated that extraordinary and compelling circumstances justify his release and that the § 3553(a) factors weigh in favor of reducing his sentence to time served.

### III.   DISCUSSION

#### A.   Clarke's Motion is Properly Before the Court

Section 3582(c) "outlines two routes" by which a defendant may come to federal court after requesting that the warden of his facility move for compassionate release on his behalf: exhaust his administrative remedies or wait thirty days. *United States v. Muhammad*, 16 F.4th 126, 130–31 (4th Cir. 2021) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021) (explaining that "'whichever' of those events occurs 'earlier' triggers the right to file in the district court.")). Clarke submitted a request for compassionate release to his facility's warden on November 29, 2022. (ECF No. 300-3.) The warden received Clarke's request on December 2, 2022. (*Id.*) Clarke filed his *pro se* Motion on February 22, 2022. (ECF No. 300.) Because Clarke waited thirty days before filing his Motion with the Court, he satisfied the procedural threshold of § 3582(c), and the Court proceeds to the merits of his Motion. *Muhammad*, 16 F.4th at 131.

#### B.   Extraordinary and Compelling Circumstances Render Clarke Eligible for Compassionate Release

The circumstances which bring Clarke before the Court are heart wrenching, and the Court has no interest in belaboring the facts supporting his Motion. The events of November 20, 2022 were tragic and unforeseeable. The incapacitation of an inmate's spouse when no other

9

caregiver is available is a textbook example of an extraordinary and compelling circumstance which renders an inmate eligible for a sentence reduction.[11] Application Note 1.C(ii), U.S.S.G. § 1B1.13; *Hargrove*, 30 F.4th at 194 (citing *McCoy*, 981 F.3d at 282 n.7). Moreover, the Government does not oppose Clarke's Motion. (ECF No. 320.)

Taken together, the Court finds that the medical incapacitation of Clarke's wife, particularly in light of the facts surrounding the accident which led to her condition, is an extraordinary and compelling reason rendering Clarke eligible for compassionate release.

### C. The § 3553(a) Factors Support Clarke's Immediate Release

Before this Court may grant a defendant's motion for compassionate release, it must first consider the § 3553(a) sentencing factors to the extent that they are applicable. *High*, 997 F.3d at 186. Those factors include the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from a defendant's further crimes. 18 U.S.C. § 3553(a)(1)–(2).

The Court begins by noting that the seriousness of Clarke's criminal conduct weighs against reducing his sentence. Clarke helped to introduce large quantities of dangerous and destructive drugs into Virginia communities. And although the Court credits both Clarke's forthright acceptance of responsibility and his explanation that "his conduct was the product of

---

[11] Although the Court harbors no doubt that Nyssa Clarke's family would find a way to ensure her continuing care and comfort in Clarke's absence, § 3582(c)(1)(A) is not so inflexible that Clarke must demonstrate that no other conceivable source of care is available. Neither Curtis Clarke's exit from Navy service nor requiring that Nyssa's extended family indefinitely uproot their lives and homes presents a reasonable alternative to care provided by her husband of nearly two decades.

10

terrible judgment in attempting to get a 'quick fix' for family financial problems," (ECF No. 314, at 5), these facts contributed to Clarke's original below-guidelines sentence. Perhaps more importantly, the same temptations that drew Clarke to drug distribution in the first instance continue to exist in equal or greater force today.

Despite this hesitation, the Court finds that the remaining factors weigh largely in favor of the relief sought. In 2021 Clarke came before the Court with a minimal criminal record, a strong work history and a robust support system of friends and family willing to attest to his good character. Based on these facets of Clarke's life and history, the Court accepted that Clarke's foray into crime was what he claimed it to be: a departure from his character as a citizen and a man. The evidence before the Court today strengthens this conclusion. *See United States v. Malone*, 57 F.4th 167, 17677 (4th Cir. 2023) (explaining that a district court must consider how intervening changes in a defendant's health, age or rehabilitation, as well as any "extraordinary and compelling circumstances," may have "shifted" the balance of relevant § 3553(a) factors).

In the two years of Clarke's incarceration, he has conducted himself as model inmate, completing several rehabilitative programs and incurring no disciplinary infractions. (ECF No. 314, at 6; ECF No. 300, at 2–3.) Moreover, Clarke works as a "town driver," a position that allows Clarke to leave his facility and drive "inmates, guests and others to and from the community." (ECF No. 300, at 2.) Finally, Clarke has maintained close ties with his family, who come before the Court to evince their full support of Clarke as he reenters society. (*See* ECF Nos. 314-4, 314-5, and 300-1, at 6–23 (letters).) Based on the foregoing, and noting both Clarke's age and his medical conditions, the Court finds that the remainder of Clarke's original

sentence is no longer necessary to deter Clarke from further criminal conduct, promote respect for the law or protect the public.

Finally, the Court turns to the question of just punishment. As penance for breaking the law, criminal defendants frequently forfeit not only their own liberty but the chance to attend weddings and graduations, to watch their children and grandchildren grow up, and to say goodbye to the ones they love. Yet, although this truth is not unique to Clarke neither it is without weight in the context of compassionate release. The Court finds that Clarke's familial circumstances, and the many attendant hardships that he and his family have suffered as a result, render further punitive incarceration unnecessary. Put simply, Clarke's unique circumstances outweigh "society's interests in [his] continued incarceration." *Hargrove*, 30 F.4th at 197.

Upon due consideration of the totality of the relevant circumstances, the Court concurs with the Parties that Clarke's "release would not offend the statutory requirements of § 3553(a)" and will accordingly order his immediate release. (ECF No. 320, at 1.)

## IV. CONCLUSION

For the reasons set forth above, the Court will GRANT Clarke's Motion. (ECF No. 300, 314.) With this conclusion, the Court extends to Clarke both its condolences and its counsel. Today, the Court grants an exceptionally rare opportunity, not only for Clarke to care for his wife and surviving son, but for him to make good on the faith and confidence that his family has placed in him and espoused to the Court on his behalf. The Court cautions Clarke too; the compassionate out of which such relief is born will not shield him should he squander this chance. Accordingly, the Court contemplates that it will not see him again.

Clarke's sentence shall be REDUCED to TIME SERVED, and the Court shall ORDER that he be IMMEDIATELY RELEASED to begin his period of supervised release, subject to the terms set forth in his Original Judgment, (ECF No. 242), and the following:

1) Clarke shall complete TWELVE (12) MONTHS of HOME CONFINEMENT, without GPS, during which time he may leave his property only for work, doctor's appointments and other medical care for both he and his wife, and any such additional outings and errands as necessary for daily living, to be determined by his Probation Officer; and

2) Clarke shall not leave the State of Georgia for any reason, including work, without leave of the Court.

An appropriate Order shall issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record, Clarke, the United States Bureau of Prisons and the United States Probation Office, Newport News Division.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: May 10, 2023